IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GODO KAISHA IP BRIDGE 1,      )

                                 )

      Plaintiff,          )

                                 )

      v.                    )     Civil Action No. 15-634-SLR-SRF

                                 )

TCL COMMUNICATION TECHNOLOGY)
HOLDINGS LIMITED, a Chinese    )
Corporation, TCT MOBILE LIMITED, a  )
Hong Kong Corporation, and TCT MOBILE)
(US), INC., a Delaware Corporation,   )

                                 )

      Defendants.       )

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Presently before the court in this patent infringement action is the motion to dismiss for

lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) of defendants

TCL Communication Technology Holdings Limited ("TCL Holdings") and TCT Mobile Limited

("TCT Hong Kong"). (D.I. 17) For the following reasons, I recommend that the court deny the

motion to dismiss.

## II.    BACKGROUND[1]

Plaintiff Godo Kaisha IP Bridge 1 ("IP Bridge") filed this action on July 24, 2015 against

TCL Holdings, TCT Hong Kong, and TCT Mobile (US), Inc. ("TCT US"), asserting causes of

---

[1] The factual background is taken from the amended complaint filed on July 14, 2016, unless
otherwise indicated. (D.I. 63) In a stipulation filed on July 11, 2016, the parties agreed that the
amendments to the complaint did not substantively change the allegations in the pending motion
to dismiss. (D.I. 62) As such, the parties requested that the court apply the arguments set forth
in the motion to dismiss with equal force to the allegations in the amended complaint, without
further submissions by the parties.

action for the alleged infringement of three patents owned by IP Bridge.[2] (D.I. 1) The patents-in-suit are directed to technology declared essential to one or more of the W-CDMA and LTE communication standards implemented in mobile phones and tablets that use these standards. (D.I. 63 at ¶ 30)

IP Bridge is a corporation organized and existing under the laws of Japan with its principal place of business in Tokyo, Japan. (*Id.* at ¶ 1) TCL Holdings is a corporation organized and existing under the laws of China with a principal place of business in Shenzhen, Guangdong, People's Republic of China. (*Id.* at ¶ 2) TCT Hong Kong is a wholly-owned subsidiary of TCL Holdings, and is a corporation organized and existing under the laws of Hong Kong with its registered office in Kowloon, Hong Kong. (*Id.* at ¶ 4) TCT US is a Delaware corporation and wholly-owned subsidiary of TCL Holdings with its principal place of business in Irvine, California. (*Id.* at ¶ 5)

Prior to filing the original complaint, IP Bridge attempted to engage in licensing negotiations with TCL Holdings. (*Id.* at ¶¶ 18-26) On December 15, 2014, IP Bridge sent a letter to TCL Holdings offering to license IP Bridge's patent portfolio covering W-CDMA, LTE, and related standards used in mobile telecommunications on fair, reasonable, and non-discriminatory ("FRAND") terms. (*Id.* at ¶ 18) Having received no response, IP Bridge sent a follow-up letter on January 26, 2015. (*Id.* at ¶¶ 19-20) Again, TCL Holdings failed to respond, and IP Bridge sent a second follow-up letter on February 27, 2015. (*Id.* at ¶¶ 21-22) After TCL Holdings failed to respond to the third letter, IP Bridge sent a fourth letter on April 6, 2015,

---

[2] The patents-in-suit include United States Patent Nos. 7,373,295 ("the '295 patent"), 8,351,538 ("the '538 patent"), and 8,385,239 ("the '239 patent") (collectively, the "patents-in-suit").

demanding a response if TCL Holdings wished to remain eligible for FRAND rates on the patent portfolio. (*Id.* at ¶¶ 23-24)  TCL Holdings did not respond to the April 2015 letter. (*Id.* at ¶ 25)

The amended complaint alleges that TCL Holdings, TCT Hong Kong, and TCT US have infringed the patents-in-suit by designing, manufacturing, using, marketing, importing, offering for sale, and selling mobile phones and tablets under the brands "Alcatel OneTouch" and "TCL" (the "Accused Products"). (*Id.* at ¶ 7)  TCL Holdings and TCT Hong Kong import large numbers of mobile devices into the United States for distribution throughout the United States, including Delaware, and intend for those products to be sold in Delaware. (*Id.* at ¶ 12)  The record reflects that the Accused Products were available at Walmart and Best Buy locations in Wilmington, Delaware, and receipts indicate that the Accused Products were purchased by customers in Delaware from these store locations. (*Id.* at ¶ 14)  The Accused Products were also available for purchase through websites such as Amazon.com that would ship the accused products to customers in Delaware. (*Id.*)

TCL Holdings' website describes the company as "a global mobile terminal manufacturer and internet service provider" that sells products in the United States both directly and through nationwide retailers such as Walmart and Best Buy. (D.I. 23, Ex. A)  TCL Holdings maintains an "Alcatel OneTouch" storefront on the Amazon.com website through which it sells the Accused Products directly to United States consumers, including the Alcatel OneTouch Pop C9. (*Id.*, Exs. F, G, H)

TCT Hong Kong is involved in the design and manufacture of the Alcatel OneTouch Pop C9. (*Id.*, Ex. I)  TCT Hong Kong is the only entity that appears on the manufacturing origin label of both the Alcatel OneTouch Pop C9 and the Alcatel OneTouch Evolve 2. (D.I. 23, Exs. J & K; D.I. 25, Exs. A & D)  TCT Hong Kong also sells and distributes the Accused Products in

3

the United States through its website at www.alcatelonetouch.us, where the Terms and

Conditions page identifies TCT Hong Kong as the entity responsible for the page. (D.I. 23, Exs.

L & M)

## III.    LEGAL STANDARD

Rule 12(b)(2) directs the court to dismiss a case when the court lacks personal

jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). When reviewing a motion to dismiss

pursuant to Rule 12(b)(2), a court must accept as true all allegations of jurisdictional fact made

by the plaintiff and resolve all factual disputes in the plaintiff's favor. *Traynor v. Liu*, 495 F.

Supp. 2d 444, 448 (D. Del. 2007). Once a jurisdictional defense has been raised, the plaintiff

bears the burden of establishing, with reasonable particularity, that sufficient minimum contacts

have occurred between the defendant and the forum to support jurisdiction. *See Provident Nat'l*

*Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). To meet this burden, the

plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2)

motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club*

*v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984).

To establish personal jurisdiction, a plaintiff must demonstrate facts sufficient to satisfy

both a statutory and a constitutional requirement. With respect to the statutory analysis, the court

analyzes the long-arm statute of the state in which the court is located. *See IMO Indus., Inc. v.*

*Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). Next, the court must determine whether

exercising jurisdiction over the moving defendant in this state comports with the due process

clause of the United States Constitution. *See id.*; *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,

566 F.3d 1012, 1016 (Fed. Cir. 2009) (noting that the court must apply the law of the Federal

Circuit to the constitutional inquiry in patent cases).

4

Pursuant to the relevant portions of Delaware's long-arm statute, 10 *Del. C.* § 3104(c)(1)-

(4), a court may exercise personal jurisdiction over a defendant when the defendant or its agent:

> (1) Transacts any business or performs any character of work or service in the
> State;
> (2) Contracts to supply services or things in this State;
> (3) Causes tortious injury in the State by an act or omission in this State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission
> outside the State if the person regularly does or solicits business, engages in
> any other persistent course of conduct in the State or derives substantial
> revenue from services, or things used or consumed in the State.

10 *Del. C.* § 3104(c)(1)-(4). With the exception of subsection (c)(4), the long-arm statute

requires a showing of specific jurisdiction. *See Shoemaker v. McConnell*, 556 F. Supp. 2d 351,

354-55 (D. Del. 2008). Subsection (c)(4) confers general jurisdiction, which requires a great

number of contacts, but allows the exercise of personal jurisdiction even when the claim is

unrelated to the forum contacts. *See Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp.

1458, 1466 (D. Del. 1991).

If a defendant is found to be within the reach of the long-arm statute, the court then must

analyze whether the exercise of personal jurisdiction comports with due process by determining

whether the plaintiff has demonstrated that the defendant "purposefully avail[ed] itself of the

privilege of conducting activities within the forum State," so that it should "reasonably anticipate

being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297

(1980) (citations omitted). For the court to exercise specific personal jurisdiction consistent with

due process, a plaintiff's cause of action must have arisen from the defendant's activities in the

forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The court may

exercise general personal jurisdiction consistent with due process if the plaintiff's cause of action

is unrelated to the defendant's activities in the forum state, so long as the defendant has

"continuous and systematic contacts with the forum state." *Applied Biosystems, Inc.*, 772 F. Supp. at 1458.

## IV.  DISCUSSION

### A.  Consideration of the Mao Declaration

As a preliminary matter, IP Bridge alleges that the court should not consider the Mao Declaration submitted in support of TCL Holdings and TCT Hong Kong's motion to dismiss because the declarant is not an employee of either defendant, but acts as legal counsel for TCL Communication (Ningbo) Co., Ltd. ("TCL-Ningbo"), a wholly-owned subsidiary of TCL Holdings. (D.I. 22 at 2) According to IP Bridge, the Mao Declaration is inadmissible under Federal Rules of Evidence 104(a) and 602 because it provides no basis to assume that Mao's position in TCL-Ningbo provides him with knowledge of the operations of TCT Hong Kong and TCL Holdings.[3] (*Id.* at 3) IP Bridge further contends that the representations in the Mao Declaration are inconsistent with public statements and legal filings made by TCL Holdings and TCT Hong Kong. (*Id.*) In response, TCL Holdings and TCT Hong Kong contend that the court should credit the Mao Declaration because TCL-Ningbo is a TCL Holdings subsidiary that is directly involved with the design of Alcatel OneTouch branded phones, and Mao, as a member

---

[3] During the March 29, 2016 oral argument on the pending motion, IP Bridge also indicated that the Mao Declaration was procedurally defective pursuant to 28 U.S.C. § 1746. (3/29/2016 Tr. at 17:21-18:5) In response, counsel for TCL Holdings and TCT Hong Kong alleged that IP Bridge's argument should be deemed waived, as it was not presented in the briefing. (*Id.* at 50:20-51:3) Pursuant to 28 U.S.C. § 1746(1), a declaration executed outside of the United States must contain the following language: "I declare . . . under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)." The court need not determine whether IP Bridge has waived this argument, or whether the Mao Declaration is procedurally deficient pursuant to 28 U.S.C. § 1746, in view of its conclusion that the evidence must be considered in the light most favorable to IP Bridge at this stage of the proceedings.

of the legal department, has information regarding the corporate structure and operations of the TCL entities. (D.I. 27 at 2)

When reviewing a motion to dismiss pursuant to Rule 12(b)(2), a court must accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor. *Traynor v. Liu*, 495 F. Supp. 2d 444, 448 (D. Del. 2007). Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing, with reasonable particularity, that sufficient minimum contacts have occurred between the defendant and the forum to support jurisdiction. *See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). To meet this burden, the plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984).

Where, as here, the district court does not hold an evidentiary hearing, a plaintiff need only establish a "prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004); *see also Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). When a defendant submits contradictory evidence through an affidavit, a plaintiff may not rest on the allegations in the complaint, but must come forward with affidavits or other competent evidence to show that personal jurisdiction is proper. *Byrd v. Aaron's, Inc.*, 14 F. Supp. 3d 667, 685 n.8 (W.D. Pa. 2014) (citing *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009)). Any conflict of facts between the plaintiff and defendant must be resolved in favor of the plaintiff. *Barrett v. Catacombs Press*, 44 F. Supp. 2d 717, 722 (E.D. Pa.

7

1999) (citing *TJS Brokerage & Co., Inc. v. Mahoney*, 940 F. Supp. 784, 787 (E.D. Pa. 1996); *Di Mark Mktg., Inc. v. Louisiana Health Serv. & Indemnity Co.*, 913 F. Supp. 402, 405 (E.D. Pa. 1996)). Once a plaintiff has sustained its burden of producing competent evidence showing that jurisdiction is proper, the Rule 12(b)(2) motion will be denied despite any controverting presentation by the defendant. *Chocolate Confectionary*, 602 F. Supp. 2d at 557 (citing *Careret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)).

In view of the foregoing case authorities, any factual discrepancies between the Mao Declaration and the affidavits and evidence supplied by IP Bridge must be resolved in favor of IP Bridge. Consequently, the court need not make a determination regarding the admissibility of the Mao Declaration at this stage of the proceedings.

### B. Long-Arm Statute

TCL Holdings and TCT Hong Kong contend that the court lacks personal jurisdiction over them under Delaware's long-arm statute because they are foreign companies that do not conduct business or maintain continuous and systematic contacts in Delaware. (D.I. 18 at 5-8) According to TCT Hong Kong, its U.S. activity is limited to the submission of certification documents for certain cellular telephones sold in the United States to the Federal Communications Commission ("FCC"), but it does not manufacture, import, or sell phones in the United States and does not direct any activities to Delaware. (*Id.* at 7) In response, IP Bridge contends that personal jurisdiction exists under subsections (c)(1) and (c)(3) of the Delaware long-arm statute because TCL Holdings and TCT Hong Kong engage in direct sales to Delaware customers through online stores, and IP Bridge has produced evidence of two instances of sales to distributors in Delaware. (D.I. 22 at 11-12)

8

The evidence provided by IP Bridge demonstrates that TCT Hong Kong manufactures at least two of the accused devices. Specifically, the FCC filings identify TCT Hong Kong as the manufacturer of both the Alcatel OneTouch Evolve 2 and the Alcatel OneTouch Pop C9, as do pictures of the inside of those devices. (D.I. 23, Exs. J & K; D.I. 25, Exs. A & D)  Moreover, IP Bridge has produced evidence indicating that TCT Hong Kong sells its products through its website, www.alcatelonetouch.us. (D.I. 23, Exs. L & M)  Specifically, the website lists for sale various Alcatel OneTouch models, and the Terms & Conditions portion of the website lists the contact address for TCT Hong Kong in Irvine, California. (*Id.*)  The record reflects that sales of the Alcatel OneTouch Idol 3 were made to a Delaware customer by TCT Hong Kong through this website. (D.I. 24, Ex. I)

Similarly, the record contains evidence of TCL Holdings' website, which establishes that TCL Holdings manufactures and sells products in North America, built partnerships with retail giants such as Walmart and Best Buy, and owns nine global research and development centers and a global factory that produces millions of devices per year. (D.I. 23, Ex. A)  The record reflects that TCL Holdings maintains an Amazon.com storefront, through which it sells devices directly to Delaware customers. (D.I. 23, Exs. F-H; D.I. 24, Ex. E)  The evidence suggests that a Delaware customer purchased an Alcatel OneTouch Pop C9 and an Alcatel OneTouch Idol 3 through the Amazon.com storefront and had it shipped to a Delaware address. (D.I. 24, Exs. E-H)

Delaware courts have held that a single direct sale of an infringing product to a Delaware customer satisfies subsection (c)(1) of the Delaware long-arm statute as a sufficient business transaction to establish jurisdiction. *See Friedman v. Alcatel Asthom*, 752 A.2d 544, 549 (Del. Ch. 1999).  The record in the present case suggests that both TCT Hong Kong and TCL Holdings

made direct sales of Accused Products to Delaware customers through their respective websites, and the allegations in the complaint establish that these allegedly infringing sales are the source of the claims at issue. (D.I. 24, Exs. E-I; D.I. 1) Therefore, IP Bridge has satisfied subsection (c)(1) of the Delaware long-arm statute.

IP Bridge has also satisfied subsection (c)(3) of the Delaware long-arm statute, which requires evidence establishing that a non-resident caused tortious injury in the state. Delaware courts have held that a non-resident's "intentional shipment of the accused product to Delaware" satisfies the requirement of subsection (c)(3). *Graphics Prop. Holdings Inc. v. Asus Computer Int'l, Inc.*, 964 F. Supp. 2d 320, 326 (D. Del. 2013) ("The [infringing] act occurred in Delaware because the products were delivered to Delaware customers who . . . then used the products in Delaware."). The record in the present action reflects that sales of the Alcatel OneTouch Idol 3 were made to a Delaware customer by TCT Hong Kong through the alcatelonetouch.us website and shipped to the customer's Delaware address. (D.I. 24, Ex. I) The evidence further suggests that a Delaware customer purchased an Alcatel OneTouch Pop C9 and an Alcatel OneTouch Idol 3 through the Amazon.com storefront maintained by TCL Holdings and had it shipped to a Delaware address. (D.I. 24, Exs. E-H) This evidence is sufficient to satisfy IP Bridge's burden to establish the existence of jurisdiction over TCT Hong Kong and TCL Holdings under § 3104(c)(3).

The case law cited by TCL Holdings and TCT Hong Kong is inapposite. TCL Holdings and TCT Hong Kong rely on two cases that conducted a general jurisdiction analysis and did not reach the specific jurisdiction factors. *See In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litig.*, 735 F. Supp. 2d 277, 315-16 (W.D. Pa. 2010) (requiring website to specifically target the forum state or relate to the parent's business activities in the forum state in

a general jurisdiction analysis); *Kloth v. S. Christian Univ.*, 494 F. Supp. 2d 273, 281 (D. Del. 2007) (assessing general jurisdiction, not specific jurisdiction, under the Delaware long-arm statute). Moreover, there is no evidence on the present record that an operational subsidiary actually makes the sales resulting from the transactions through the websites run by TCL Holdings and TCT Hong Kong. *See In re Nazi Era Cases Against German Defendants Litig.*, 320 F. Supp. 2d 204, 220 (D.N.J. 2004) (website did not connect customers to the parent corporation itself, but rather linked customers to subsidiaries).

IP Bridge further claims that personal jurisdiction exists under a "dual jurisdiction" or "stream of commerce" theory,[4] which combines subsections (c)(1) and (c)(4)[5] of the long-arm statute. *See Robert Bosch LLC v. Alberee Prods., Inc.*, 70 F. Supp. 3d 665, 672-76 (D. Del. 2014). The approach was adopted by Delaware courts as a mechanism by which to apply the long-arm statute to "stream of commerce" situations, or situations in which a non-resident places

---

[4] Courts within this district disagree as to whether the dual jurisdiction theory is supported by the Delaware long-arm statute. Several recent cases have supported application of the doctrine, noting that the Delaware Supreme Court has had opportunities to repudiate the doctrine but has failed to do so. *See Polar Electro Oy v. Suunto Oy*, C.A. No. 11-1100-GMS, 2015 WL 2248439, at \*4 (D. Del. May 12, 2015); *Robert Bosch LLC v. Alberee Prods., Inc.*, 70 F. Supp. 3d 665, 674-75 (D. Del. 2014) (citing *Boone*, 724 A.2d at 1156, *aff'd*, 707 A.2d 765 (Del. 1998); *Wright v. Am. Home Prods. Corp.*, 768 A.2d 518, 531 (Del. Super. Ct. 2000)). However, another judge has predicted that the Delaware Supreme Court would not adopt the dual jurisdiction theory, concluding that the Delaware Supreme Court's statements in *LaNuova* regarding subsections (c)(1) and (c)(4) were mere dicta. *Round Rock Research LLC v. ASUSTeK Computer Inc.*, 967 F. Supp. 2d 969, 976-77 (D. Del. 2013). The *Round Rock* court noted that the Delaware Superior Court's adoption of the dual jurisdiction theory is inconsistent with well-established principles that the long-arm statute should be separately analyzed from due process considerations, and its interpretation should flow from the statutory language. *Id.* at 976. Because the Delaware Supreme Court has not overruled the dual jurisdiction theory, and the Federal Circuit has recently upheld its application, *see Polar Electro Oy v. Suunto Oy*, 2016 WL 3913449, at \*7 (Fed. Cir. July 20, 2016), this court will proceed with the dual jurisdiction analysis.
[5] Subsection (c)(1) confers "specific" jurisdiction over a non-resident defendant; subsection (c)(4) confers "general" jurisdiction. *See, e.g., LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986); *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1155 (Del. Super. Ct. 1997), *aff'd*, 707 A.2d 765 (Del. 1998).

its product in the market place and may, under certain circumstances, be found to have sufficient

contacts with Delaware.

> [T]he enumerated activities in [subsection (4)] should be analyzed to determine
> whether there is an intent or purpose on the part of the [non-resident] to serve the
> Delaware market with its product.  Likewise, when analyzing [subsection] (1) it is
> not important that the [non-resident] itself act in Delaware.  Instead, if the intent
> or purpose on behalf of the [non-res ident] to serve the Delaware market results in
> the introduction of the product to this State and plaintiff's cause of action arises
> from injuries caused by that product, this section is satisfied.

*Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 371-72 (D. Del.

2008).  "Thus, the dual jurisdiction analysis requires a showing of both:  (1) an intent to serve the

Delaware market; and (2) that this intent results in the introduction of the product into the market

and that plaintiff's cause of action arises from injuries caused by that product." *Belden Techs.,*

*Inc. v. LS Corp.*, 829 F. Supp. 2d 260, 267 (D. Del. 2010) (citing *Power Integrations*, 547 F.

Supp. 2d at 372).

"Under the Delaware long-arm statute, the 'touchstone' of stream-of-commerce theory

relates to the first prong of this analysis, the 'intent and purpose to serve the Delaware market.'"

*Eastman Chem. Co. v. AlphaPet Inc.*, C.A. No. 09-971-LPS-CJB, 2011 WL 6004079, at *16 (D.

Del. Nov. 4, 2011) (citing *Power Integrations*, 547 F. Supp. 2d at 372).  A non-resident

defendant's intent to serve the United States market is sufficient to establish an intent to serve the

Delaware market, unless there is evidence that the defendant intended to exclude Delaware from

its marketing and distribution efforts. *Power Integrations, Inc.*, 547 F. Supp. 2d at 373.

The record in the present case establishes TCT Hong Kong's intent to serve the Delaware

market by manufacturing and selling phones, which it actively markets in the United States and

distributes through national retailers like Best Buy.  (D.I. 23, Exs. J & K; D.I. 24)  Under the

relevant case authorities regarding dual jurisdiction, TCT Hong Kong's intent to distribute the

products throughout the United States is sufficient to establish TCT Hong Kong's intent to serve the Delaware market specifically.[6] *See Robert Bosch LLC v. Alberee Prods., Inc.*, C.A. No. 12-574-LPS, 2016 WL 1180131 (D. Del. Mar. 16, 2016); *Power Integrations*, 547 F. Supp. 2d at 373; *Eastman Chem.*, 2011 WL 6004079, at \*16. Likewise, TCL Holdings has presented evidence that it manufactures mobile phones and sells them throughout the United States. (D.I. 23, Ex. A; D.I. 24) The record further reflects that sales have been made in Delaware at retailers such as Best Buy and Walmart. (D.I. 24, Exs. A-D); *Robert Bosch*, C.A. No. 12-574-LPS, Memorandum Order, D.I. 357; D.I. 360 at ¶ 4 (D. Del. Mar. 17, 2016) ("Furthermore, the finished . . . products have actually been sold by Costco in Delaware."). The foregoing evidence establishes that TCL Holdings and TCT Hong Kong intended to serve the United States market without excluding Delaware, thereby satisfying the first prong of the dual jurisdiction analysis.

The record also shows that both TCL Holdings and TCT Hong Kong's introduction of their products to the Delaware market gives rise to IP Bridge's injuries under the second prong of the dual jurisdiction analysis. *See Robert Bosch* , C.A. No. 12-574-LPS, Memorandum Order, D.I. 357; D.I. 360 at ¶ 4 (D. Del. Mar. 17, 2016) ("[I]t is undisputed that this cause of action

---

[6] The plurality decision written by Justice Kennedy in the United States Supreme Court's decision in *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011) rejected the idea that an intent to serve the United States market could demonstrate purposeful availment of the forum state. *Nicastro*, 131 S. Ct. at 2790. The Supreme Court's plurality decision concluded that "the defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have *targeted the forum*; as a general rule it is not enough that the defendant might have predicted that its goods will reach the forum state." *Id.* at 2788. However, dual jurisdiction cases in this district are distinguishable because they "d[o] not rely solely on targeting the national market to satisfy the stream-of-commerce test," and also stress the importance of establishing that the accused products are shipped to Delaware and that a relationship exists with end users of the products in Delaware. *Eastman Chem.*, 2011 WL 6004079, at \*18 (citing *Power Integrations*, 547 F. Supp. 2d at 367). The District of New Jersey has stressed that "*Nicastro* does not clearly or conclusively define the breadth and scope of the stream of commerce theory, as there was not a majority consensus on a singular test." *Oticon, Inc. v. Sebotek Hearing Sys., LLC*, 865 F. Supp. 2d 501, 513 (D.N.J. 2011).

arises from injuries caused by those products."). TCL Holdings sells directly to U.S. customers through Amazon.com and partners with domestic distributors such as Walmart and Best Buy to sell products to Delaware customers. (D.I. 24, Exs. C & D; D.I. 23, Ex. A) Moreover, the record demonstrates that TCT Hong Kong's phones are sold at a Best Buy location in Delaware. (D.I. 24, Ex. A; D.I. 25, Ex. A) No evidence on the record suggests that TCL Holdings and TCT Hong Kong intended to exclude Delaware from their efforts to distribute the Accused Products in the United States. Thus, the second prong of the test for stream of commerce jurisdiction under the Delaware long-arm statute has been met. *See Graphics Prop. Holdings, Inc.*, 70 F. Supp. 3d at 662 (statutory analysis satisfied by evidence of sales in Delaware by three physical resale outlets); *Polar Electro*, 2015 WL 2248439, at *4 (statutory analysis satisfied by evidence of eight e-commerce transactions made in Delaware); *Robert Bosch LLC*, 70 F. Supp. 3d at 678-80 (stream of commerce jurisdiction over out of state manufacturer and seller found when sales were made to U.S. chain retailer with a location in Delaware, and said store sold the accused product).

## C. General Jurisdiction

IP Bridge contends that TCT Hong Kong is also subject to general jurisdiction under subsection (c)(4) of the Delaware long-arm statute because TCT Hong Kong represented in previous litigation that it was incorporated in Delaware. (D.I. 22 at 17) However, the record reflects that TCT Hong Kong is a Hong Kong corporation. (D.I. 63 at ¶ 4) The Delaware Secretary of State website identifies TCT US as a Delaware corporation (D.I. 23, Ex. E), but contains no listing for TCT Hong Kong (D.I. 28, Ex. A). IP Bridge cites no case authority to support the proposition that a representation regarding a corporation's state of incorporation made in an unrelated litigation constitutes sufficient evidence to overcome documentary

evidence confirming the corporation's state of incorporation presented in the instant case. As previously stated, a plaintiff cannot rely only on the allegations in the complaint when a defendant presents affidavits and evidence that refute those allegations. *See Byrd v. Aaron's, Inc.*, 14 F. Supp. 3d 667, 685 n.8 (W.D. Pa. 2014) (citing *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009)). Relying on allegations in a complaint from another litigation in another jurisdiction would appear to be even more tenuous. Therefore, TCT Hong Kong is not subject to general jurisdiction in Delaware based on a representation made in a previous litigation in another jurisdiction.

### D. Due Process

The court next turns to the due process analysis. In support of the motion to dismiss, TCT Hong Kong and TCL Holdings contend that IP Bridge's cause of action does not arise from the activities of TCL Holdings or TCT Hong Kong in Delaware. (D.I. 18 at 9) Specifically, TCL Holdings and TCT Hong Kong assert that neither company conducts business in the United States or Delaware, and TCT Hong Kong's contacts with the FCC are unrelated to the cause of action. (*Id.*) According to TCL Holdings and TCT Hong Kong, jurisdiction is not appropriate when based on a defendant's relationship with its wholly-owned subsidiaries responsible for the sale and importation of accused products in the United States. (*Id.*)

In response, IP Bridge contends that exercising personal jurisdiction over TCL Holdings and TCT Hong Kong comports with due process because they placed the Accused Products in the stream of commerce, they knew the likely destination of the products, and they should have reasonably anticipated being brought into court in Delaware based on their conduct. (D.I. 22 at 18) According to IP Bridge, exercising personal jurisdiction over a defendant who sells products nationally comports with due process. (*Id.* at 19)

15

In *Asahi Metal Industry Co. v. Superior Court*, Justice O'Connor explained that

> [t]he "substantial connection" between the defendant and the forum State
> necessary for a finding of minimum contacts must come about by an action of the
> defendant purposefully directed toward the forum State. The placement of a
> product into the stream of commerce, without more, is not an act of the defendant
> purposefully directed toward the forum State.

480 U.S. 102, 112 (1987) (plurality opinion) (internal citation omitted). This test is satisfied

when a party engages in "[a]dditional conduct . . . indicat[ing] an intent or purpose to serve the

market in the forum State, for example . . . marketing the product through a distributor who has

agreed to serve as the sales agent in the forum State." *Id.*

IP Bridge has submitted evidence indicating that TCL Holdings and TCT Hong Kong

purposefully availed themselves of the privilege of conducting business in Delaware by

introducing their products in the United States market with the knowledge that some of those

products would end up in Delaware and they should anticipate being sued in Delaware. (D.I. 23,

Exs. A, F-H, L-M; D.I. 24, Exs. E-I) This evidence supports an inference "that the distribution

channel formed by [TCL Holdings and TCT Hong Kong] was intentionally established, and that

defendants knew, or reasonably could have foreseen, that a termination point of the channel was

[Delaware]." *Robert Bosch*, C.A. No. 12-574-LPS, Memorandum Order, D.I. 357; D.I. 360 at ¶

6 (D. Del. Mar. 17, 2016) (quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d

1558, 1564 (Fed. Cir. 1994)). Similar to the facts before the court in *Robert Bosch*, the record in

the present case demonstrates that TCL Holdings and TCT Hong Kong had knowledge that their

products were distributed nationwide through retailers such as Best Buy and Walmart, and they

"purposefully shipped the accused [products] into [Delaware] through an established distribution

channel [and] [t]he cause of action for patent infringement is alleged to arise out of these

activities." *Robert Bosch*, C.A. No. 12-574-LPS, Memorandum Order, D.I. 357; D.I. 360 at ¶ 6

(D. Del. Mar. 17, 2016) (quoting *Beverly Hills Fan Co.*, 21 F.3d at 1565).

Because the Accused Products were actually sold in Delaware, and TCL Holdings and

TCT Hong Kong "purposefully availed [themselves] of the privileges and laws of Delaware" by

manufacturing and selling products for the U.S. market, exercising jurisdiction over TCL

Holdings and TCT Hong Kong based on stream of commerce comports with due process.

*Robert Bosch*, C.A. No. 12-574-LPS, Memorandum Order, D.I. 357; D.I. 360 at ¶ 7 (D. Del.

Mar. 17, 2016).  Consequently, I recommend that the court deny the pending motion to dismiss,

as IP Bridge has met its prima facie burden of establishing that the court's exercise of personal

jurisdiction over TCL Holdings and TCT Hong Kong is proper.

### E.  Jurisdictional Discovery

IP Bridge requests limited jurisdictional discovery in the event that the court

contemplates granting TCL Holdings and TCT Hong Kong's partial motion to dismiss.  (D.I. 22

at 19)  TCL Holdings and TCT Hong Kong oppose IP Bridge's request.  (D.I. 27 at 7-8)  Having

concluded that the exercise of personal jurisdiction over TCL Holdings and TCT Hong Kong is

proper, I recommend that the court deny the request for jurisdictional discovery.

### V.  CONCLUSION

For the foregoing reasons, I recommend that the court deny TCL Holdings and TCT

Hong Kong's partial motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P.

12(b)(2).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation.

17

Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart,* 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: August 17, 2016

Sherry R. Fallon
United States Magistrate Judge

18