IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GODO KAISHA IP BRIDGE 1,<br><br>Plaintiff,<br><br>v.<br><br>TCL COMMUNICATION TECHNOLOGY HOLDINGS LIMITED, a Chinese Corporation, TCT MOBILE LIMITED, a Hong Kong Corporation, TCT MOBILE (US), INC., a Delaware Corporation, and TCT MOBILE, INC., a Delaware Corporation,<br><br>Defendants. | Civil Action No. 15-634-SLR-SRF |

**REPORT AND RECOMMENDATION**

## I. INTRODUCTION

Presently before the court in this patent infringement action is plaintiff Godo Kaisha IP Bridge 1's ("IP Bridge") motion to dismiss the counterclaims of defendants TCT Mobile (US), Inc. and TCT Mobile, Inc. (D.I. 74) For the following reasons, I recommend that the court grant the motion to dismiss without prejudice, and afford TCT the opportunity to amend its counterclaims.

## II. BACKGROUND

### A. Procedural History

IP Bridge filed this action on July 24, 2015 against TCL Communication Technology Holdings Limited ("TCL Holdings"), TCT Mobile Limited ("TCT Mobile"), and TCT Mobile (US), Inc. (collectively, together with TCT Mobile, Inc., "defendants"), asserting causes of

action for the alleged infringement of three of its patents owned by assignment.[1] (D.I. 1) The patents-in-suit are directed to technology declared essential to the global 2G, 3G, and 4G telecommunications standards established by the European Telecommunications Standards Institute ("ETSI"). (D.I. 68 at 9, ¶ 4) On December 11, 2015, TCT Mobile (US), Inc. answered the complaint (D.I. 16), and TCT Mobile and TCL Holdings filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) (D.I. 17). While the motion to dismiss for lack of personal jurisdiction was pending, IP Bridge filed an amended complaint on July 14, 2016, adding TCT Mobile, Inc. as a defendant. (D.I. 63) The parties stipulated that this amendment would have no bearing on the substance of the Rule 12(b)(2) motion to dismiss. (D.I. 62) The amended complaint alleges that defendants infringed the patents-in-suit by designing, manufacturing, using, marketing, importing, offering for sale, and selling mobile phones and tablets under the brands "Alcatel OneTouch" and "TCL" (the "Accused Products"). (D.I. 63 at ¶ 7) TCT Mobile (US), Inc. and TCT Mobile, Inc. filed an answer to the amended complaint on August 3, 2016, adding counterclaims for breach of contract, violations of the Sherman Act, and patent misuse. (D.I. 68)

On August 17, 2016, this court issued a Report and Recommendation, which recommended denial of the motion to dismiss. (D.I. 72) The court entered a Memorandum Order adopting the Report and Recommendation on September 29, 2016. (D.I. 103) IP Bridge filed the instant motion to dismiss the counterclaims asserted by TCT Mobile (US), Inc. and TCT Mobile, Inc. (together, "TCT") on August 22, 2016. (D.I. 74)

---

[1] The patents-in-suit include United States Patent Nos. 7,373,295 ("the '295 patent"), 8,351,538 ("the '538 patent"), and 8,385,239 ("the '239 patent") (collectively, the "patents-in-suit").

### B. Factual Background

IP Bridge's predecessor-in-interest, Panasonic Corporation ("Panasonic"), committed to licensing the patents-in-suit on "fair, reasonable and non-discriminatory terms" ("FRAND") as essential patents to the global 2G, 3G, and 4G cellular telecommunications standards. (D.I. 68 at ¶ 4) Panasonic made this commitment to ETSI in return for inclusion of the patents on ETSI's roster of "standard essential patents" ("SEPs"). (*Id.* at ¶¶ 11-13)

Prior to filing the original complaint, IP Bridge attempted to engage in licensing negotiations with TCL Holdings. (D.I. 63 at ¶¶ 18-26) According to IP Bridge, defendants failed to respond to IP Bridge's repeated attempts to license its patent portfolio on FRAND terms. (*Id.*) TCT contends that Panasonic's contractual commitments with ETSI to license the technology on FRAND terms were binding on IP Bridge as successor-in-interest. (D.I. 68 at ¶¶ 19-20) TCT pleads that IP Bridge has breached its obligations by attempting to license its entire patent portfolio for more than a FRAND royalty. (*Id.* at ¶¶ 6-9)

### III. LEGAL STANDARDS

#### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter, or if the plaintiff lacks standing to bring its claim. Motions brought under Rule 12(b)(1) may present either a facial or factual challenge to the court's subject matter jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (quoting *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009)). In reviewing a facial challenge under Rule 12(b)(1), the standards relevant to Rule 12(b)(6) apply. In this regard, the court must accept all factual allegations in the complaint as true, and the court may only consider the complaint and documents referenced in or attached to the complaint. *See*

*Church of Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x 285, 288 (3d Cir. 2008); *Gould Elec., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). In reviewing a factual challenge to the court's subject matter jurisdiction, the court is not confined to the allegations in the complaint. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Instead, the court may consider evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction. *See Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997). Once the court's subject matter jurisdiction over a complaint is challenged, the plaintiff bears the burden of proving that jurisdiction exists. *See Lincoln*, 800 F.3d at 105; *Mortensen*, 549 F.2d at 891.

### B. Rule 12(b)(6)

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008). "[C]ourts use the same standard in ruling on a motion to dismiss a counterclaim under Rule 12(b)(6) as they do in assessing a claim in a complaint." *Identix Pharms., Inc. v. Gilead Sciences, Inc.*, C.A. No. 13-1987-LPS-CJB, 2014 WL 4222902, at *5 (D. Del. Aug. 25, 2014) (citing *Tyco Fire Prods. LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 898-99 (E.D. Pa. 2011)).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that

is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

When determining whether dismissal is appropriate, the court must take three steps.[2] *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must identify the elements of the claim. *Iqbal*, 556 U.S. at 675. Second, the court must identify and reject conclusory allegations. *Id.* at 678. Third, the court should assume the veracity of the well-pleaded factual allegations identified under the first prong of the analysis, and determine whether they are sufficiently alleged to state a claim for relief. *Id.*; *see also Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The third prong presents a context-specific inquiry that "draw[s] on [the court's] experience and common sense." *Id.* at 663-64; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise

---

[2] Although *Iqbal* describes the analysis as a "two-pronged approach," the Supreme Court observed that it is often necessary to "begin by taking note of the elements a plaintiff must plead to state a claim." 556 U.S. at 675, 679. For this reason, the Third Circuit has adopted a three-pronged approach. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## IV.   DISCUSSION

### A.   Breach of Contract Counterclaim

In support of the pending motion to dismiss, IP Bridge alleges that TCT's breach of contract counterclaim fails to allege any injury or damages, as required pursuant to Rules 12(b)(1) and (b)(6). (D.I. 75 at 7)  In response, TCT contends that IP Bridge breached Panasonic's agreement by seeking a non-FRAND royalty. (D.I. 80 at 4)  According to TCT, the damage from IP Bridge's breach is the difference between a FRAND royalty for the asserted patents and any higher royalty, or costs flowing from an injunction, if IP Bridge prevails. (*Id.* at 5)

I recommend that the court dismiss without prejudice TCT's counterclaim for breach of contract.  To state a claim for breach of contract under Delaware law, a counterclaimant must plead: "(1) the existence of the contract, whether express or implied; (2) the breach of an obligation imposed by that contract; and (3) the resultant damage to the [counterclaimant]." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 390 (3d Cir. 2016) (quoting *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)).  TCT's counterclaim alleges that IP Bridge breached its contractual commitments with ETSI, 3GPP, and their respective members "by refusing to agree to a FRAND rate to its identified patents under reasonable rates, with reasonable terms, and on a non-discriminatory basis, and by failing to provide separate rates for each of the 2G, 3G, and 4G standards." (D.I. 68 at ¶ 22)  Nowhere does the counterclaim

identify the resultant injury from this purported breach.[3] *See Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 627 (D. Del. 2015) ("A breach of contract complaint may be dismissed where the plaintiffs' claims are not tied to any damages.") (citation and internal quotation marks omitted).

At oral argument, TCT directed the court to paragraphs 4[4] and 22 of the counterclaims to demonstrate the injury suffered from IP Bridge's purported breach of its FRAND obligations. (12/7/16 Tr. at 32:5-14) Paragraph 6 of the counterclaims states that IP Bridge intends to "seek more than [FRAND] royalty," and IP Bridge challenges TCT's eligibility to license the patents-in-suit at FRAND rates. (D.I. 68 at ¶ 6) Paragraph 22 of the counterclaims asserts that "IP Bridge breached these contracts by refusing to agree to a FRAND rate to its identified patents under reasonable rates, with reasonable terms, and on a non-discriminatory basis." (*Id.* at ¶ 22) Neither of these paragraphs contains sufficient allegations to put IP Bridge on notice of the alleged injury suffered because they discuss the basis for the purported breach without identifying the specific harm caused by that breach.

TCT's reliance on *Research In Motion Ltd. v. Motorola, Inc.* does not compel a different result. 644 F. Supp. 2d 788, 797 (N.D. Tex. 2008). Unlike the circumstances before the court in

---

[3] TCT's allegation in its answering brief that "[t]he damage from IP Bridge's breach is the difference between a FRAND royalty for the asserted patents and any higher royalty, or costs flowing from an injunction, should IP Bridge prevail," is insufficient to plead an injury because "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (internal quotation marks and citations omitted).

[4] Although counsel cited to paragraph 4, counsel discussed language that appears at paragraph 6 of the counterclaim. (12/7/16 Tr. at 32:5-14) (noting that the paragraph "says that IP Bridge will seek more than a FRAND royalty, that TCT is no longer eligible for such a FRAND royalty.") This is confirmed by counsel's subsequent reference to paragraph 6. (*Id.* at 33:2-4) ("So this counterclaim is based on positions that IP Bridge is taking in this case, referring again to counterclaim Paragraph 6.")

the present case, the *Research In Motion* court addressed whether the plaintiff "*suffered* any damages." *Id.* (emphasis added). The complaint at issue pleaded that, "[a]s a result of these multiple contractual breaches, [the plaintiff] has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers and potential customers, and loss of goodwill and product image." (N.D. Tex. C.A. No. 08-284, D.I. 1 at ¶ 166) In contrast, the issue presently before the court is whether injury or damages were pleaded at all in connection with the breach of contract counterclaim, as required under Delaware law. *See Avaya*, 838 F.3d at 390. Consequently, the facts before the court are distinguishable from the circumstances presented in *Research In Motion*. For the foregoing reasons, I recommend that the court dismiss the breach of contract counterclaim without prejudice.

IP Bridge further contends that the breach of contract counterclaim must be dismissed for lack of standing and ripeness under Rule 12(b)(1) because TCT cannot demonstrate any non-speculative injury where, as here, TCT has not yet paid a super-FRAND rate. (D.I. 75 at 7; D.I. 94 at 2) In its answering brief, TCT does not address IP Bridge's standing or ripeness arguments with respect to the breach of contract counterclaim. At oral argument, TCT alleged that the breach currently affects potential licensing negotiations and the course of this litigation. (12/7/16 Tr. at 32:22-35:10)

TCT's breach of contract counterclaim cannot survive under Rule 12(b)(1) for the same reasons it fails the Rule 12(b)(6) analysis. TCT's cause of action for breach of contract is not ripe and does not confer standing where, as here, TCT has failed to plead damages resulting from the breach. *See Kaymak v. AAA Mid Atl., Inc.*, 529 F. App'x 222, 225 (3d Cir. 2013) (affirming dismissal under Rule 12(b)(1) where the plaintiff failed to establish a concrete or imminent injury). TCT's reliance on *Thomas v. Union Carbide Agricultural Products Co.* during oral

8

argument[5] is inapposite because the appellees in that case "allege[d] an injury from EPA's unlawful conduct," whereas in the present case, TCT has not alleged any injury resulting from the purported breach of contract. 473 U.S. 568, 581-82 (1985).

### B. Antitrust Counterclaims

IP Bridge next contends that TCT's antitrust counterclaim should be dismissed for failure to state a claim under Sections 1 and 2 of the Sherman Act. (D.I. 75 at 8-10) Specifically, IP Bridge argues that TCT failed to allege a conspiracy or an unreasonable restraint on trade as required by Section 1, and failed to define the relevant market or establish injury to competition in the general market as required by Section 2. (*Id.*) In response, TCT alleges that IP Bridge's patents are essential, and the telecommunications standards define the relevant market. (D.I. 80 at 7) Moreover, TCT contends that the act of demanding a non-FRAND remedy for use of a standard-essential patent is anticompetitive conduct. (*Id.* at 8)

#### 1. Section 1 of the Sherman Act

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust, or conspiracy in restraint of trade." 15 U.S.C. § 1. Courts construe Section 1 to prohibit unreasonable restraints on trade. *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 99 (3d Cir. 2010). To properly plead a Section 1 claim, a plaintiff must plead two elements: (1) "that the defendant was a party to a contract, combination . . . or conspiracy;" and (2) "that the conspiracy to which the defendant was a party imposed an unreasonable restraint on trade." *In*

---

[5] TCT addressed IP Bridge's standing and ripeness arguments for the first time at oral argument. (12/7/16 Tr. at 33:10-35:10) TCT failed to address these arguments in its answering brief. The court notes that TCT, as the party opposing a Rule 12(b)(1) motion, bears the burden of proving that the jurisdictional requirements are met. *See Princeton Digital Image Corp. v. Office Depot Inc.*, C.A. No. 13-239-LPS *et al.*, 2016 WL 1533697, at *7-8 (D. Del. Mar. 31, 2016) (citing *Dev. Fin. Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995)).

*re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 315 (3d Cir. 2010) (internal citations and quotation marks omitted). The Supreme Court has explained that the party asserting a Section 1 claim must show "a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946). "Unilateral activity by a defendant, no matter the motivation, cannot give rise to a section 1 violation." *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159 (3d Cir. 2003).

    TCT raises no arguments in support of its Section 1 counterclaim in its answering brief. During oral argument, TCT identified paragraphs 4 and 10 through 14 in support of its Section 1 claim, explaining that, while the counterclaim contains no allegation of a conspiracy, it satisfies the first prong of the Section 1 analysis by alleging the existence of a contract. (12/7/16 Tr. at 35:11-36:17) ("I don't think we're specifically alleging any conspiracy in this one."). However, the existence of a contract is not sufficient absent an allegation of collusion. *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, 2011 WL 4948567, at *7 (N.D. Cal. Oct. 18, 2011) ("A Plaintiff cannot state a claim under section 1 absent an allegation that it acted in concert with another party; it is not sufficient to allege that it acted alone in a collaborative forum."); *Vizio, Inc. v. Funai Elec. Co. Ltd.*, 2010 WL 7762624, at *6 (C.D. Cal. Feb. 3, 2010) (concluding that Section 1 claim was sufficiently pleaded where a patent owner and its predecessor-in-interest acted in concert to circumvent a FRAND commitment to a standard setting organization). The counterclaim paragraphs cited by TCT do not identify any other entity involved in IP Bridge's alleged efforts to circumvent its FRAND obligations. (D.I. 68 at ¶¶ 4; 10-14; 23-26) There is no allegation, as in *Vizio*, that IP Bridge schemed with its predecessor-in-interest, Panasonic, to avoid the FRAND commitment. *See Vizio*, 2010 WL 7762624, at *6 (upholding pleading which alleged that patent owner and predecessor-in-interest agreed to fix prices by charging a second

royalty for the standard essential patents and splitting the profits). TCT's failure to plead that IP Bridge acted in concert with another entity is fatal to its Section 1 cause of action. Consequently, I recommend that the court dismiss TCT's counterclaim under Section 1 of the Sherman Act without prejudice.

### 2. Section 2 of the Sherman Act

Liability under Section 2 of the Sherman Act requires: (1) the possession of monopoly power in the relevant market, and (2) a showing that the monopolist achieved monopoly power through anticompetitive conduct. *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004). Defining the scope of the market is a question of fact on which the counterclaimant bears the burden of proof. *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 307 (3d Cir. 2007) (citing *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997); *Weiss v. York Hosp.*, 745 F.2d 786, 825 (3d Cir. 1984)). Anticompetitive conduct "is generally defined as conduct to obtain or maintain monopoly power as a result of competition on some basis other than the merits." *Broadcom*, 501 F.3d at 308 (citing *LePage's Inc. v. 3M*, 324 F.3d 141, 147 (3d Cir. 2003)). "Conduct that merely harms competitors . . . while not harming the competitive process itself, is not anticompetitive." *Id.* (citing *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224 (1993)).

I recommend that the court grant IP Bridge's motion to dismiss TCT's counterclaim brought under Section 2 of the Sherman Act. The counterclaim states that, "[b]y asserting to ETSI and 3GPP that the asserted patents . . . are standard-essential patents, IP Bridge has established itself in a position of monopoly power in the Relevant Technology Market," and "[b]y refusing to license the asserted patents to TCT US on FRAND terms, should it prevail in this litigation, IP Bridge has abused that monopoly power and engaged in uncompetitive conduct

11

toward TCT US." (D.I. 68 at ¶¶ 24-25) TCT's allegation that IP Bridge "engaged in uncompetitive conduct toward TCT US" does not adequately plead the requisite anticompetitive harm. (D.I. 68 at ¶ 25) To state a claim under Section 2 of the Sherman Act, Third Circuit precedent requires that an intentionally false promise be made to a standard setting organization ("SSO"), and the SSO must rely on the false promise when including the technology in the standard. *See Broadcom*, 501 F.3d at 314 (holding that "a patent holder's intentionally false promise to license essential proprietary technology on FRAND terms . . . coupled with an SDO's reliance on that promise when including the technology in a standard, and . . . the patent holder's subsequent breach of that promise, is actionable anticompetitive conduct."); *see also Microsoft Mobile Inc. v. Interdigital, Inc.*, C.A. No. 15-723-RGA, 2016 WL 1464545, at *1 (D. Del. Apr. 13, 2016) (noting that the patentee "falsely promised to license its SEPs on FRAND terms," and "[b]ut for IDC's deception . . . ETSI would have included in the standards alternate technologies or not specified any technology at all.").

In the present case, the counterclaims allege that Panasonic, as the predecessor-in-interest to IP Bridge, made "public and binding commitments to the international community" to license the technology on FRAND terms. (D.I. 68 at ¶ 4) The transfer of the patents-in-suit from Panasonic to IP Bridge occurred after Panasonic entered into the agreement with ETSI. (*Id.*) TCT's Section 2 claim against IP Bridge cannot survive because IP Bridge did not reach the agreement with ETSI, and its actions therefore did not cause anticompetitive harm in the context of Section 2 of the Sherman Act. *See Vizio, Inc. v. Funai Elec. Co. Ltd.*, 2010 WL 7762624, at *4 (C.D. Cal. Feb. 3, 2010) (dismissing Section 2 antitrust claim where, as here, the predecessor-in-interest to the patent-in-suit entered into the FRAND agreement with the SSO); *see also Broadcom*, 501 F.3d at 314 (holding that Section 2 liability requires "a patent holder's

12

intentionally false promise to license essential proprietary technology on FRAND terms" to an SSO who must rely on the false promise).

At oral argument, TCT acknowledged that the relevant court cases involve a patent holder who enters into an agreement with the SSO with the intention of violating its FRAND commitment, but questioned whether the intent must be present at the time of the standard's adoption to be deemed anticompetitive. (12/7/16 Tr. at 38:15-40:12) In support of its position, TCT evaluated the Federal Trade Commission ("FTC") analysis in *In re Motorola Mobility LLC & Google Inc.*, File No. 121-0120, for the proposition that the FTC has the authority to "reach opportunistic conduct that takes place after a standard is adopted that tends to harm consumers and undermine the standard-setting process." (*Id.* at 41:3-42:8) (citing Federal Trade Commission, *Analysis of Proposed Consent Order to Aid Public Comment, In re Motorola Mobility LLC & Google Inc.*, FTC File No. 121-0120, at 4 (Jan. 3, 2013)). The court is not bound by the FTC's analysis, and declines to recommend expansion of the Third Circuit's decision in *Broadcom* to reach violations of FRAND commitments occurring after the standard's adoption. 501 F.3d at 314 (requiring "a patent holder's intentionally false promise to license essential proprietary technology on FRAND terms."); *see also Vizio*, 2010 WL 7762624, at *4 (C.D. Cal. Feb. 3, 2010) (dismissing Section 2 antitrust claim where, as here, the predecessor-in-interest to the patent-in-suit entered into the FRAND agreement with the SSO).

TCT also relies on *Research In Motion* in its answering brief to establish that the owner of a SEP may cause anticompetitive harm by seeking a non-FRAND royalty after making a commitment to do so. (D.I. 80 at 8) However, *Research In Motion* does not adequately support TCT's position because the pleading in that case expressly stated that the SSOs relied on Motorola's false promises that it would license its patents on FRAND terms, and Motorola

13

gained anticompetitive advantage by misrepresenting its intentions to the SSOs at that time. 644 F. Supp. 2d at 796. Therefore, *Research In Motion* is consistent with *Broadcom*, *Vizio*, and other decisions holding that a Section 2 claim exists when the SSO relies on a patent holder's false promise that it will license its patents on FRAND terms. For the foregoing reasons, I recommend that the court dismiss TCT's cause of action under Section 2 of the Sherman Act without prejudice.

TCT's amended Section 2 counterclaim should clearly define the relevant telecommunications standard. In *Broadcom*, "[t]he Complaint defined the relevant market as the market for Qualcomm's proprietary WCDMA technology, a technology essential to the implementation of the UMTS standard." *Broadcom*, 501 F.3d at 315. In contrast, TCT's Section 2 counterclaim references the Relevant Technology Market without defining the term in its counterclaims. (D.I. 68) Paragraph 4 of TCT's counterclaims describes the patents-in-suit as essential to the global 2G, 3G, and 4G telecommunications standards, but does not expressly define these standards as the "Relevant Technology Market." (D.I. 68 at ¶ 4) "The Court is not unmindful of the inherently factual nature of defining the relevant markets. But a litigant must adumbrate *in each counterclaim* an intelligible definition of the elements of its antitrust claim, even under the liberal notice pleading requirements of the Federal Rules of Civil Procedure." *CCPI Inc. v. Am. Premier, Inc.*, 967 F. Supp. 813, 819 (D. Del. 1997) (emphasis added).

### C. Patent Misuse Counterclaim

According to IP Bridge, the act of demanding a non-FRAND royalty rate is not sufficient to state a claim for patent misuse. (D.I. 75 at 11) IP Bridge further contends that portfolio licensing does not constitute patent misuse. (*Id.* at 12-13) In response, TCT alleges that the basis for its patent misuse claim is the same as its antitrust claim, and IP Bridge's refusal to

license the three asserted patents absent an agreement to license its entire patent portfolio is an improper tying arrangement constituting patent misuse. (D.I. 80 at 9)

Patent misuse is "the patentee's act of impermissibly broadening the physical or temporal scope of the patent grant with anticompetitive effect." *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1328 (Fed. Cir. 2010) (internal quotation marks omitted). "The courts have identified certain specific practices as constituting *per se* patent misuse, including so-called 'tying' arrangements in which a patentee conditions a license under the patent on the purchase of a separable, staple good and arrangements in which a patentee effectively extends the term of its patent by requiring post-expiration royalties." *Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997) (internal citation omitted). However, under § 271(d), "in the absence of market power, even a tying arrangement does not constitute patent misuse." *Id.* In *U.S. Philips Corp. v. Int'l Trade Comm'n*, the Federal Circuit held that package licenses are not per se patent misuse, because a "package license is thus not anticompetitive in the way that a compelled purchase of a tied product would be." 424 F.3d 1179, 1189-90 (Fed. Cir. 2005) (finding that there was "no evidence that a portion of the royalty was attributable to the [nonessential] patents" and, thus, no basis to support the conclusion that "a hypothetical licensing fee would have been lower if Philips had offered to license the patents on an individual basis or in smaller packages.").

TCT's counterclaim for patent misuse cannot withstand IP Bridge's Rule 12(b)(6) motion. TCT asserts three bases for its patent misuse counterclaim:

> (1) demanding a royalty higher than the FRAND royalty that its predecessor agreed to seek and by refusing to license the asserted patents to TCT US on FRAND terms; (2) conditioning any agreement to license the asserted patents on TCT US's agreement to license IP Bridge's entire patent portfolio; and (3) asserting license obligations that would, according to IP Bridge, persist even if the asserted patents are determined to be invalid.

15

(D.I. 68 at ¶ 28) However, all three asserted bases illustrate that TCT's patent misuse counterclaim is premised on an offer to license which has not been consummated. "Many courts have concluded that mere offers cannot constitute patent misuse unless they are ultimately consummated." *On Track Innovations Ltd. v. T-Mobile USA, Inc.*, 106 F. Supp. 3d 369, 404 (S.D.N.Y. 2015); *see Va. Panel Corp.*, 133 F.3d at 871 (concluding that an offer which was not consummated could not constitute *per se* tying or patent misuse). TCT has offered no authority to the contrary, and acknowledged during oral argument that "[w]e don't think that is a competitive harm that is going on right now." (12/7/16 Tr. at 43:21-22) Instead, TCT expressed its concern that "we would be waiving our right to raise questions about competitive effects under the misuse case law . . . if we were to sign off on the agreement under their terms." (*Id.* at 44:7-11) This reasoning does not overcome the case authorities requiring a claim for patent misuse to be based on a consummated agreement.

Moreover, TCT's patent misuse counterclaim does not allege that IP Bridge's portfolio licensing restricts the use of the patents-in-suit in a specific way that falls outside the broad scope of the patent grant. *See Princo Corp.*, 616 F.3d at 1329 ("While proof of an antitrust violation shows that the patentee has committed wrongful conduct having anticompetitive effects, that does not establish misuse of the patent in suit unless the conduct in question restricts the use of the patent . . . outside the otherwise broad scope of the patent grant."); *U.S. Philips Corp.*, 424 F.3d at 1192-93. Pursuant to 35 U.S.C. § 271(d)(5), conditioning the license of rights to a patent on the acquisition of a license to rights in another patent is not misuse unless "the patent owner has market power in the relevant market for the patent . . . on which the license or sale is conditioned." Consequently, I recommend that the court dismiss TCT's counterclaim for patent misuse without prejudice.

## V. CONCLUSION

For the foregoing reasons, I recommend that the court grant IP Bridge's motion to dismiss TCT's counterclaims. (D.I. 74) I recommend that TCT be permitted to amend its counterclaims in accordance with this ruling within thirty (30) days of resolution of any objections to this Report and Recommendation.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart,* 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: February 27, 2017

Sherry R. Fallon
United States Magistrate Judge