IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GODO KAISHA IP BRIDGE 1, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civ. No. 15-634-JFB |
| | ) | |
| TCL COMMUNICATION | ) | |
| TECHNOLOGY HOLDINGS | ) | |
| LIMITED, A Chinese Corporation, | ) | MEMORANDUM & ORDER |
| TCT MOBILE LIMITED, a Hong | ) | |
| Kong Corporation, TCT | ) | |
| MOBILE (US), INC., A Delaware | ) | |
| Corporation, and TCT MOBILE, INC., | ) | |
| A Delaware Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on a motion for post-trial relief filed by plaintiff Godo Kaisha IP Bridge 1 ("IP Bridge") (D.I. 504). This action was tried to a jury from October 30, 2018, to November 8, 2018, on IP Bridge's claim that TCL's accused mobile phone devices infringed claims 9 and 12 of U.S. Patent No. 8,385,239 ("the '239 patent") and claims 15 and 16 of U.S. Patent No. 8,351,538 ("the '538 patent").

I.  BACKGROUND

The jury found that TCL infringes all four asserted claims, found all four claims valid, and awarded damages in the amount of $950,000 for both patents.[1] D.I. 487, Verdict (sealed) at 4. The jury rejected IP Bridge's willfulness claim. *Id.* at 2.

The parties agree that each of the accused products is capable of connecting to a LTE network in the United States. D.I. 430, PTO, Ex. 1, Joint Statement of Uncontested Facts at 20. Evidence adduced at trial, apparently credited by the jury, established that without practicing the asserted patent claims, an LTE phone will not

---

[1] That figure represents a FRAND royalty rate of four cents per patent per infringing product.

1

work. The jury's verdict in favor of IP Bridge reflects a finding that products that are capable of using and communicating over LTE networks infringe the asserted claims because the asserted claims have been found to be essential to mandatory portions of the LTE standard. Thus, the evidence establishes that there is no colorable difference between other TCL LTE products and the accused products as they relate to the patent claims at issue.

The record shows that IP Bridge sought damages in the form of a reasonable royalty based on sales data disclosed during discovery and sought ongoing royalties absent an injunction. The experts expressed opinions on reasonable royalty rates as applied to revenue from infringing sales up to March 31, 2018. The jury was instructed: "[i]f you find that IP Bridge has established infringement, IP Bridge is entitled to at least a reasonable royalty to compensate it for that infringement." D.I. 481, Initial Jury Instructions at 45, Instruction No. 36. The Court further instructed the jury:

> A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.

*Id.*, Instruction No. 37. The jury was also instructed, in determining damages to consider whether the asserted patent "is a standard essential patent, that is, the LTE wireless communications standard cannot be practiced without infringing the patent." D.I. 483, closing Jury Instructions at 4, Instruction No. 46. The verdict form asked: "What has IP Bridge proven, by a preponderance of the evidence, to be a fair, reasonable, and non-discriminatory ('FRAND') royalty for use of the invention covered by all of the infringed and valid Asserted Patent(s)?" D.I. 512, Verdict at 4. The verdict

form, without objection from either party, did not require the jury to determine a per unit royalty rate.

In its motion for post-trial relief, IP Bridge moves to amend the judgment under Federal Rule of Civil Procedure 59(e). IP Bridge seeks: (1) supplemental damages and an accounting of infringing sales of all adjudicated products through the date of the verdict; (2) prejudgment interest calculated at the prime rate, compounded quarterly, and postjudgment interest at the legal rate on sales of adjudicated products;[2] (3) ongoing royalties, at three times the rate found by the jury, for all TCL LTE products, both adjudicated and non-adjudicated;[3] (4) enhanced (trebled) past damages due to exceptional circumstances including litigation misconduct; and (5) fees and costs to make IP Bridge whole.

IP Bridge argues that it is entitled to supplemental damages to cover sales between the date of the last produced sales data (on which the jury based its determination) and the date of the verdict. It seeks prejudgment interest at the prime rate as a more appropriate measure of the harm it suffered as a result of the infringement. Further, it contends it is entitled to ongoing royalties to account for TCL's continued infringement of the asserted patents for both the adjudicated products and other TCL LTE products.[4] It also argues royalty rate should be trebled with respect to post-verdict damages to account for changed circumstances, TCL's pre-complaint "hold-out," and the ongoing infringement. Also, IP Bridge argues that enhanced

---

[2] The parties agree that TCL was provided with notice of infringement of the asserted patents later than July 24, 2015 when IP Bridge filed its complaint. D.I. 430, Pretrial Order, Ex. 1, Joint Statement of Uncontested Facts at 3.
[3] IP Bridge also asks that the Court award supplemental discovery and an accounting regarding the identity and sales of non-accused LTE products.
[4] Adjudicated products are identified in Exhibit 15 to the Joint Pretrial Order (collectively, the "Accused Products"). D.I. 430-2, Pretrial Order, Ex. 15.

3

(trebled) past damages are warranted, despite the jury's finding of no willful infringement, due to TCL conduct in failing to negotiate a license to SEPs subject to FRAND obligations. Last, IP Bridge contends that the exceptional nature of this case warrants the award of attorneys' fees, and nontaxable costs and expenses under 35 U.S.C. § 285.

In response, TCL concedes that IP Bridge is entitled to post judgment interest at the legal rate under 28 U.S.C. § 1961, but opposes IP Bridge's motion in all other respects. It challenges IP Bridge's interest arguments, contending that any award of prejudgment interest should use the T-bill rate compounded annually, rather than the prime rate compounded quarterly. It also argues that there is no legal support for ongoing royalties' damages for unadjudicated products or for an award of enhanced damages in the absence of a finding of willful infringement. In its Answering Brief, TCL includes a request for fees and costs for preparing its opposition to IP Bridge's motion, under either 35 U.S.C. § 285 or the Court's inherent authority. D.I. 514, Brief at 20. TCL contends that IP Bridge's motion is "exceptional" because it is meritless and vexatious.

II. LAW

A. Standard of review

Federal Rule of Civil Procedure 59(e) expressly recognizes a court's authority to alter or amend its judgments. Fed. R. Civ. P. 59(e). "Consistently with this original understanding, the federal courts generally have invoked Rule 59(e) only to support reconsideration of matters properly encompassed in a decision on the merits[,]" and legal issues collateral to the main cause of action. *White v. New Hampshire Dep't of Emp't Sec.*, 455 U.S. 445, 451 (1982). The principal limitation on that discretion is that

a motion to amend "may not be granted where to do so would undermine the jury's fact-finding role and trample on the defendant's Seventh Amendment right to a jury trial." Robinson v. Watts Detective Agency, Inc., 685 F.2d 729, 742 (1st Cir. 1982).

Specifically, Rule 59(e) has been invoked to correct damage awards that were improperly calculated, and to include prejudgment interest to which a party was entitled. *See* Lubecki v. Omega Logging, Inc., 674 F. Supp. 501 (W.D. Pa. 1987), *aff'd*, 865 F.2d 251 (3d Cir. 1988); 11 Wright and Miller, Federal Practice and Procedure, § 2817 n. 28–29.

The rule governing motions to alter or amend judgment is the proper basis for bringing a request for prejudgment interest. J.A. McDonald, Inc. v. Waste Sys. Int'l Moretown Landfill, Inc., 247 F. Supp. 2d 542, 546 (D. Vt. 2002). The method used to calculate amount of judgment and prejudgment interest involves matters of law and is based on undisputed facts, and therefore is appropriately resolved by way of a motion to amend judgment. Commercial Assocs. v. Tilcon Gammino, Inc., 801 F. Supp. 939, 942 (D. R. I. 1992), *aff'd* 998 F.2d 1092 (1st Cir. 1993).

B.  Interest

"Prejudgment interest on a damages award for patent infringement 'is the rule' under 35 U.S.C. § 284[.]" Sensonics, Inc. v. Aerosonic Corp., 81 F.3d 1566, 1574 (Fed. Cir. 1996). The purpose of prejudgment interest "to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement." Gen. Motors Corp. v. Devex Corp., 461 U.S. 648, 655 (1983). An award of interest from the time that the royalty payments would have been received merely serves to make the patent owner whole, since the damages consist not only of the value of the royalty payments but also of the foregone use of the money

5

between the time of infringement and the date of the judgment. *Id.* at 655-56. "The rate of prejudgment interest and whether it should be compounded or uncompounded are matters left largely to the discretion of the district court" and "must be guided by the purpose of prejudgment interest, which is to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement." *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986) (internal quotation marks and citations omitted). "Courts have recognized that the prime rate best compensate[s] a patentee for lost revenues during the period of infringement because the prime rate represents the cost of borrowing money, which is 'a better measure of the harm suffered as a result of the loss of the use of money over time.'" *IMX, Inc. v. LendingTree, LLC*, 469 F. Supp. 2d 203, 227 (D. Del.) *on reconsideration in part*, No. CIV. 03 1067 SLR, 2007 WL 1232184 (D. Del. Apr. 25, 2007) (quoting *Mars, Inc. v. Conlux USA Corp.*, 818 F. Supp. 707, 720–21 (D. Del.), *aff'd*, 16 F.3d 421 (Fed. Cir. 1993); *see also Amgen Inc. v. Hospira, Inc.*, 336 F. Supp. 3d 333, 364 (D. Del. 2018). "[I]t is not necessary that a patentee demonstrate that it borrowed at the prime rate in order to be entitled to prejudgment interest at that rate." *Uniroyal, Inc. v. Rudkin–Wiley Corp.*, 939 F.2d 1540, 1545 (Fed.Cir.1991) (citation omitted).

Post-judgment interest should accrue at the statutory rate as specified in 28 U.S.C. § 1961(a). *Amgen Inc.,* 336 F. Supp. 3d at 364. Section 1961(a) provides, "Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment . . . ." 28 U.S.C. § 1961(a). Section 1961(a) does not provide for interest until a money judgment fixing the amount owed to the prevailing party. *Eaves v. Cty. of Cape May*,

239 F.3d 527, 534 (3d Cir. 2001). "The statute does not, by its terms, mandate that the judgment from which interest is calculated must be a final judgment." *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1177-78 (3d Cir. 1993); *see also Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 216 (3d Cir. 2004) ("The fact that the December 13, 2001, judgment was not a final order for purposes of appeal would not otherwise prevent postjudgment interest from running under § 1961 . . . .").

  C. Ongoing Infringement

Under 35 U.S.C. § 284, damages for patent infringement are authorized "[u]pon finding for the claimant" in an amount "adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer[.]" 35 U.S.C. § 284. Patentees are entitled to supplemental damages accounting for any infringing sales that occurred before the verdict but that were not reflected in the last financial discovery produced. *See, e.g., E.I. DuPont de Nemours and Co. v. Unifrax I LLC*, No. 14–1250–RGA, 2017 WL 4004419, *7-*8 (D. Del. 2017).

To provide relief against ongoing infringement, a court can consider several remedies: "(1) it can grant an injunction; (2) it can order the parties to attempt to negotiate terms for future use of the invention; (3) it can grant an ongoing royalty; or (4) it can exercise its discretion to conclude that no forward-looking relief is appropriate in the circumstances." *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 35 (Fed. Cir. 2012). An ongoing royalty permits an adjudged infringer to continue using a patented invention for a price. *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1313 n.13 (Fed. Cir. 2007) (defining an ongoing royalty and distinguishing a compulsory license). The Federal Circuit has identified 35 U.S.C. § 283, which authorizes "injunctions in accordance with the principles of equity," as statutory authority for

awarding ongoing royalties. *See id.* at 1314 (citing § 283 and stating that "[u]nder some circumstances, awarding an ongoing royalty for patent infringement in lieu of an injunction may be appropriate"). If a permanent injunction is not warranted, courts have the power to assess a reasonable ongoing royalty in light of continued infringement when the parties are unable to negotiate a license regarding the future use of a patented invention. *See Paice,* 504 F.3d at 1315; *see also Bard Peripheral Vascular, Inc. v. WL. Gore & Assocs., Inc.*, 670 F.3d 1171, 1192 (Fed. Cir. 2012) (explaining that the "award of an ongoing royalty instead of a permanent injunction to compensate for future infringement is appropriate in some cases"). When a patentee requests running royalty damages, and the jury awards damages through trial, district courts have authority to craft a compulsory ongoing royalty for future sales of products the jury found to infringe. *See Paice,* 504 F.3d at 1315.[5]

The criteria for adjudicating a violation of a prohibition against continued infringement by a party whose products have already been adjudged to be infringing is a matter of Federal Circuit law. *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 881–82 (Fed. Cir. 2011). The inquiry as to whether there "is a fair ground of doubt as to the wrongfulness of the defendant's conduct" in continued infringement in patent cases is "one of colorable differences between the newly accused product and the adjudged infringing product." *Id.* at 882; *see also Abbott Labs. v. TorPharm, Inc.*, 503 F.3d 1372, 1380 n.3 (Fed. Cir. 2007). Thus, the party seeking to enforce an injunction (or obtain ongoing royalties) must prove both that the newly accused product is not more than colorably different from the product found to infringe and that the newly accused product

---

[5] Accordingly, while this remedy involves monetary relief, there is no Seventh Amendment right to jury trial for ongoing royalties. *See Paice,* 504 F.3d at 1315-16 ("[T]he fact that monetary relief is at issue in this case does not, standing alone, warrant a jury trial.").

8

actually infringes. *Id.*; *see also Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2018 WL 905943, at *4 (N.D. Cal. Feb. 15, 2018)(applying the injunction standard on continued infringement by newly accused products to ongoing royalties). The Federal Circuit states:

> The analysis must focus not on differences between randomly chosen features of the product found to infringe in the earlier infringement trial and the newly accused product, but on those aspects of the accused product that were previously alleged to be, and were a basis for, the prior finding of infringement, and the modified features of the newly accused product. Specifically, one should focus on those elements of the adjudged infringing products that the patentee previously contended, and proved, satisfy specific limitations of the asserted claims. Where one or more of those elements previously found to infringe has been modified, or removed, the court must make an inquiry into whether that modification is significant. If those differences between the old and new elements are significant, the newly accused product as a whole shall be deemed more than colorably different from the adjudged infringing one, and the inquiry into whether the newly accused product actually infringes is irrelevant.

*TiVo Inc.*, 646 F.3d at 881–82. The significance of the differences between the two products is much dependent on the nature of the products at issue. *Id.*

D. Enhanced Damages

"[A]n award of enhanced damages requires a showing of willful infringement." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007) (en banc) (emphasis added); *accord i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 858 (Fed. Cir. 2010). "Awards of enhanced damages" are reserved for "egregious infringement behavior" the Court has "variously described . . . as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, — U.S. —, —, 136 S. Ct. 1923, 1932 (2016). In other words, reprehensible conduct undertaken with knowledge of its wrongfulness. *See id.* at 1930-32. Willfulness "is a classical jury question of intent. When trial is had to a jury, the

9

issue should be decided by the jury." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016).

E. Attorney Fees, Expenses and Costs

Section 285 provides, in its entirety, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "When deciding whether to award attorney fees under § 285, a district court engages in a two-step inquiry." *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915 (Fed. Cir. 2012). The court first determines whether the case is exceptional and, if so, whether an award of attorney fees is justified. *Id.* at 915-16. The Supreme Court defines "an 'exceptional' case [as] simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). An "exceptional" case is "'uncommon,' 'rare,' or 'not ordinary[.]'" *Id.* at 553. District courts may "consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

III. DISCUSSION

A. Supplemental Damages

The Court finds that IP Bridge is entitled to supplemental damages for any infringing sales that occurred before the verdict but were not reflected in the last

10

financial discovery produced on March 31, 2018. The Court will order an accounting of infringing sales of all adjudicated products through the date of verdict.

    B.    Interest

The Court finds that prejudgment interest calculated at the prime rate, compounded quarterly, is an appropriate approximation of the amount necessary to make the patentee whole for infringement of its patents as to the adjudicated products. The parties agree that TCL had notice of infringement no later than July 24, 2015 when IP Bridge filed its complaint, and prejudgment interest should accrue beginning on that date with respect to the accused products.

TCL does not challenge IP Bridge's request for post-judgment interest. On January 2, 2019, the Court entered judgment following the jury verdict for IP Bridge and against TCL on the jury's verdict in the amount of $950,000. D.I. 512, Judgment Following Verdict (incorporating Special Interrogatories). As of that date, there existed a money judgment for IP Bridge that identified the parties for and against whom the judgment was being entered and set out a definite and certain designation of the amount owed. Accordingly, the Court will award IP Bridge post-judgment interest on the $950,000 damages award beginning on date of entry of that judgment. Prejudgment interest, however, will not have been quantified in a money judgment until the date of the final judgment awarding prejudgment interest and ongoing royalties following this opinion. Accordingly, the Court will award IP Bridge post-judgment interest on the prejudgment interest commencing on the date of entry of a final judgment.

C.   Ongoing Royalties

The Court finds that an award of ongoing royalties to IP Bridge is appropriate. The Court finds, based on the evidence, expert testimony, the parties' arguments, and the jury's damages award, that IP Bridge was meant to recover a running royalty as opposed to a lump-sum, paid-through-expiration license. The Court finds the jury verdict reflects an appropriate determination of the FRAND royalty rate and the Court will not supplant the jury's determination. The Court finds IP Bridge's argument that a post-verdict royalty should be enhanced because there is a difference between a hypothetical negotiation at the time of infringement and a hypothetical negotiation once validity and infringement have been determined has less force in the context of a standard essential patent. A SEP patent must be licensed at a fair, reasonable, and nondiscriminatory rate. The jury determined that rate. There is no reason for the Court to choose a royalty rate higher than the jury's rate. Although IP Bridge seeks royalties at three times the rate found by the jury, the court finds the rate established by the jury verdict is the appropriate measure.

Accordingly, the Court finds IP Bridge shall recover a reasonable royalty in the amount of four cents per unit per patent on adjudicated products from and after March 31, 2018. The Court also finds that, going forward, royalties for unadjudicated products—any LTE products TCL sells—should be awarded. The record establishes that there is no colorable difference between the accused products and products that are able to use and communicate over LTE networks. The evidence adduced at trial shows that LTE phones do not operate on the LTE network without infringing the asserted claims. The jury determined that the asserted claims were standard essential patent claims.

IP Bridge contends that TCL has released numerous LTE products beyond those adjudicated at trial. D.I. 506-4, Ex. 6, excerpts and product manuals downloaded from publicly available websites, including TCL's website. TCL has not responded to the merits of that factual contention, it argues only that the court lacks authority to impose an ongoing royalty on unadjudicated products. Because IP Bridge showed at trial that the asserted claims are standard essential patents and any LTE products would necessarily infringe the asserted patent claims, the Court finds that TCL's other LTE products are not colorably different that the accused products. The Court finds that TCL's other LTE products infringe IP Bridge's patent claims in the same way the accused products do.

IP Bridge would ordinarily be entitled to an injunction against continued infringement. Because an injunction is not generally appropriate in an action involving a SEP, the patentee is instead entitled to an ongoing royalty. The Court will award an accounting of and an ongoing royalty for non-adjudicated TCL LTE products sold after November 21, 2017 (the date of IP Bridge's final identification of accused products). D.I. 506-5, Ex. 8, Identification of Accused Products.

D. Enhanced (trebled) Past Damages

The jury found no willful infringement and the Court will abide by that determination. IP Bridge's allegations of "hold out" and TCL's supposedly being an "unwilling licensee" have no relevance in view of the jury's verdict. As the Court pointed out at the close of evidence, IP Bridge's "unwilling licensee" theory was part and parcel of its willfulness claim. The Court also rejects IP Bridge's theory that TCL's "patent hold-out" conduct and its litigation conduct demonstrate bad faith or flagrant conduct warranting enhanced damages, notwithstanding the jury's determination. The jury

heard essentially the same evidence that IP Bridge relies on in support of its position. The Court sees no reason to disturb the jury's finding that TCL's infringement was not willful.

The Court agrees with TCL that nothing about this case "stands out from others" as to either the strength of IP Bridge's claims or the manner in which the case was litigated. IP Bridge sought, but failed, to prove willful infringement. It recovered far less in damages than it sought. IP Bridge is now constrained by the consequences of its litigation strategies. The jury was presented with opposing expert opinions and chose one over the other.

E. Attorney Fees and Nontaxable Costs and Expenses

With respect to IP Bridge's motion for an award of attorney fees and related nontaxable costs and expenses, the Court finds that this is not a case so exceptional as to justify an award of such fees and expenses under 35 U.S.C. § 285. Although this patent case was hotly contested and involved numerous disputes between the parties, the record does not show that the either party adopted unreasonable or frivolous litigation positions, litigated in an unreasonable manner, or acted in bad faith. Such zealous representation is the rule, not the exception, in most patent cases.

Similarly, the Court will deny TCL's corresponding request for reimbursement of its fees and expenses for responding to IP Bridge's motion. The Court largely resolved the post-trial motions in IP Bridge's favor. IP Bridge is the prevailing party and TCL has not shown that IP Bridge's litigation tactics have been frivolous or vexatious.

IT IS ORDERED:

1. The plaintiff's motion for post-trial relief is granted in part and denied in part as set forth in this Memorandum and Order.

2. The plaintiff's motion is denied with respect to enhanced damages, attorney fees, and nontaxable costs and expenses.

3. The defendant shall provide an accounting of infringing sales of all adjudicated products from March 31, 2018, through the date of verdict to the plaintiff within three weeks of the date of this order.

4. The defendant shall identify all non-accused LTE products to plaintiff and provide an accounting of all infringing sales of non-accused LTE products from and after November 21, 2017, to the plaintiff within four weeks of the date of this order.

5. The plaintiff shall recover prejudgment interest, calculated at the prime rate, compounded quarterly, on the amount of $950,000.00 from and after July 24, 2015, to January 2, 2019.

6. The plaintiff shall recover postjudgment interest at the legal rate on the amount of $950,000 from and after January 2, 2019 until such judgment is paid.

7. The plaintiff shall recover postjudgment interest at the legal rate on the amount of prejudgment interest recovered from the defendant from and after the date a final judgment is entered.

8. The plaintiff shall recover ongoing royalties at the rate of four cents per unit per patent for products adjudicated to infringe the '239 patent and the '538 patent from January 2, 2019, to expiration of the patent.

9. The plaintiff shall recover ongoing royalties at the rate of four cents per unit per patent for LTE products not colorably different from the adjudicated products from this date to expiration of the '239 and '538 patents.

10. The parties shall submit final accountings and proposed final judgment orders to the Court within two months of the date of this order.

11. TCL's Request for Fees and Costs for Responding to IP Bridge's Motion (D.I. 504) is denied.

DATED this 24th day of April, 2019.

BY THE COURT:
s/ Joseph F. Bataillon
Senior United States District Judge